To appeal 23-2364 and 16-3508, Robert Fletcher et al. v. Peter Doig. We'll begin with oral argument. Mr. is it Cedilla? Cedilla. Cedilla for you. Thank you. Thank you and good morning. I represent only Mr. Zieske in his appeal of the sanctions order. And I want to begin by saying that a case with weaknesses is not a frivolous case. Mr. Cedilla, this case had more than weaknesses. You know, here's what I'm most interested in this case. This is an interesting mess in my view that we've got here. We've got a judge who denied summary judgment based on, in my view at least, the exact same facts that the judge relied upon to impose sanctions going back to two years before the denial of summary judgment. But let me ask you, what do we do with this? You know, you've got, I understand your argument with respect to send it back, you know, reverse the sanctions order. Of course, you want no sanctions here. But this case was, I mean, beyond extraordinarily weak. And what I'm interested in is, if the district judge, if we remand this case to the district judge, what is the district judge to do with it? Okay? Meaning, what is your theory or what is plaintiff's theory at trial by which plaintiff could have possibly won this case? It was, and again, there was gaps in the record, but what it came down to was a credibility determination. And if you read the trial judge's oral findings in the transcript, the judge made no less than 34 different credibility determinations. This is at the summary judgment transcript? No, this is after trial. The transcript of the oral rulings in August 2016, I believe it was, after the trial. Those included the artist, Doig, his mother, Doig's sister, Bovard, the experts. And then it did not find Fletcher intentionally untruthful. And then it found his memory lapsed after 40 years understated. I thought what the judge found is just a total lack of proof by the plaintiff. The plaintiff continued to pursue a case that the plaintiff could absolutely lose, and unequivocally was going to lose. And the problem is somebody is on the hook for these fees that the defendant was, you know, I guess summary judgment should have been granted for the defendant, period. That would have resolved this. But it wasn't. And so who's responsible for the fees after summary judgment was denied? Because your client continued to pursue, in my view at least, a less than frivolous lawsuit. I don't think in my, I don't know, 25 years of practicing law, I don't think I've ever seen anything like this. It's not a case I've seen before. I will agree with you there. But there was evidence that the judge ruled was sufficient to go to trial. And there were gaps in the record. And I will add that defendants were partially responsible for the denial of summary judgment. Their own exhibits contained inconsistencies in the dates of the, their emails between Doig, the artist and his domestic partner were inconsistent as to when Doig was working on this oil field in Alberta, which would have precluded his presence in Thunder Bay at the time. And then there were the letters from Doig's mother that the defense didn't produce until a week before trial in which were ultimately excluded from evidence. In which the trial judge did say he would have granted summary judgment had he had those letters at the time. So that might make it worse for you, by the way. I mean, you had the letters. At least your client had the letters. Not until a week before trial. And there was no chance to... I thought you said a week before summary judgment. I'm sorry, a week before trial. And there was no chance to hold those up to scrutiny, to depose any witnesses, to request further. And that's why they were excluded. And ultimately those didn't factor into the judge's trial determination because they weren't in evidence. Mr. Cedillo, would we, if the defendant hadn't filed for summary judgment and this case just what he did at trial and imposed the sanctions, would we even be here? I don't... I think we would still be here if... You're saying if the judge imposed sanctions. No, no. If summary judgment procedure never existed. Okay, but the judge still imposed sanctions after trial. I think we would still be here because all the evidence that was contained... Well, maybe we wouldn't be. All the evidence that was contained in the Rule 11 letter and then the subsequent affidavit of Bovard, which was the key in the judge's May 7th trigger date for the sanctions award, was seen by the judge at summary judgment. And the judge looking at that said, oh, there's enough here to go to trial. Had that evidence gone to trial... Well, that's not exactly... I mean, to be fair, that's not exactly what he said, right? What he said was, I cannot assess the credibility of Mr. Fletcher, and I have to also draw whatever reasonable inferences there are in his favor. And so given those things, I can't grant summary judgment. Frankly, if you had granted summary judgment and the case was appealed, I'm not sure what we would do with that. Well, that wasn't the only determination the judge made. There was an affidavit, and yes, he did have to assess credibility, but there were documentary evidence included as well. And the judge ruled there were evidentiary gaps that needed a fact finder to resolve. And ultimately, those resolved against plaintiffs in this case. What about, Mr. Cedillo, the idea that viewing the evidence in light most favorable to the non-movement at summary judgment, and these being factual circumstances, means that the denial of summary judgment doesn't necessarily preclude the assessment of sanctions? Well, let's go back to the summary judgment standard for that. It's appropriate when no reasonable trier of fact could find for the non-movement. Now, what is a frivolous case when there's no reasonable basis in fact or law? So we have that reasonableness standard. We have the judge on one hand saying, a reasonable find for the plaintiff based on the evidence presented. Yet, at the same time during the chronology, there was no reasonable basis for bringing suit. That's an inconsistency that I don't think, it doesn't, that warrants sanctions, or that allows the judge sanctions awards to fail, at least at that point in 2016. It looks like other circuits do allow for a finding of sanctions post-denial of summary judgment. You rely on this Lebeau case. Correct. Didn't Lebeau involve a matter of law, though, rather than a matter of fact? Well, and I think Lebeau, and there is, I think Lebeau, it does involve a matter of law, but I don't think that should make a difference here. It's whether there's a reasonable basis to proceed to trial. If that's an issue of law, that certainly will be precluded or not. Issues of facts are less cut and dry, I will concede that here, but still there's a line where there's a reasonable basis or not. And I think if we read Lebeau in the context of what the Sixth and Second Circuits have done, and the LeMaster and the Callaway case, particularly Callaway, because that involved an issue of fact. There was a falsified affidavit there. We have egregious conduct. In other words, there's something more than just the facts on summary judgment didn't bear out at trial. And I just want to highlight some of what these evidentiary gaps were that allowed the case to proceed to trial. There was sparsely documented whereabouts of Doid. There were no official records from the prison or the university. There's no signature on the university card. As Judge Kirsch alluded to, this is kind of a perfect storm of gaps in the record that required a finder of fact here. But wait a minute. The Royal Mounted Police, they put in evidence in the summary judgment record that no person with Doig's name, birthdate, and fingerprints had a criminal record. I believe that is correct. How could the plaintiff possibly overcome that evidence to say that I actually met him in the penitentiary when the police are saying this man has no criminal record? I mean, you know, and it gets back to the summary judgment question. My concern is that, yes, there are credibility determinations, but there has to be a genuine dispute of material fact. And when all the evidence is on one side of the table versus somebody's foggy recollection, to me, that's just not a genuine dispute of material fact. That wasn't the only piece of evidence. I mean, it was in the record. I will agree to that. But there were other gaps. For example, the prison records. And there were, I believe, issues regarding the record keeping at that time that the police had. So again, and then there was no... What evidence did Mr. Fletcher have that the painter, Doig, had ever been in prison? He didn't have any positive evidence that he had been in prison. All he had was gaps in the record. And under the summary judgment standard, I think the judge correctly applied that and said this case has to go to trial based on that. We have to judge Doig's testimony versus Fletcher's. Well, Doig's testimony plus all the other evidence. Plus the documentary evidence, which had gaps in it. Versus Mr. Fletcher's speculation. Well, his foggy recollection was the words used by the trial judge. And to resolve those I do have the remainder of my time reserved. If there are no further questions, I will call you later. Thank you, Mr. Cedilla. We'll now move to Mr. Schaafboek. Good morning, Your Honor. Christopher Schaafboek on behalf of the appellee, Peter Doig. May it please the court. The district court properly exercised its discretion, so its order should be affirmed. Mr. Zeiske does not challenge any of the district court's factual findings as clearly erroneous. So the narrow question on appeal is whether Lebeau created the novel rule that he urges. Mr. Schaafboek, should summary judgment have been granted for your client in this case? It's a close call, Your Honor. How is it close? I think for the reasons the district court articulated, there were three main pieces of evidence. One was the letter that appellant's counsel mentioned, where the defendant could not indisputably prove that the painter Peter Doig was not in Toronto during the time period. In what world do we live in where the defendant has to have irrefutable proof of his or her whereabouts at a particular time? It was buttressed, Your Honor, by two more important pieces of evidence. And I think Judge Lee was getting to this point. It was Fletcher's credibility, which had to be decided in his favor at that point. And then also the plaintiff's expert witness, who the court has said, in theory, could be able to substantiate that this other person, Doig, had made the painting. At trial, the court found that although the plaintiff's expert's theory was theoretically sound, it in fact didn't establish at all that the painting was made by Peter Doig. So that's one flip that happened at trial. And then you have Robert Fletcher's statement that I met Peter Doig. I bought the painting from him. That's the person I remember seeing. And given the mountain of evidence on the defense side, it is still a close question. But I think the court was not... We deal with these cases all the time in prison context, where an inmate says one thing and all the evidence is on the other side. And we find, or district courts routinely find every day, that that does not create a genuine dispute of material fact. Even if the court was wrong to deny summary judgment, that still doesn't absolve plaintiffs and their counsel. And that's my question. I think you're exactly right. That doesn't change the analysis. The fees are still warranted. It's a lawyer's responsibility, not the court's, to objectively assess the strength of the client's claims, and then to desist when it becomes apparent that those claims no longer have a reasonable possibility of prevailing. I think, in my view, the case would be a lot easier if the district judge, in ruling in your client's favor, had said simply, I do not believe Mr. Fletcher. I think he lied. Because we have all this other evidence, and now that I've seen it all, I just don't think... I think he is misrepresenting and that he's lying. But he didn't really say that. He said that he... At least he didn't say that expressly. He said that Mr. Fletcher's memory was dull to the passage of time. He doesn't think that Mr. Fletcher was intentionally misleading the court or anyone else. That makes it a bit more difficult for your position, doesn't it? I don't think so. I think that it illuminates how egregious plaintiff's counsel conduct was, because he was sitting in a position to objectively assess that. He would have known that there were these gaps, that his client trying to remember something 40 years ago couldn't overcome the evidence that had been produced at that point, that was going to come in, that they expected to be admitted. The district judge wasn't in the same position. The district judge can't take that same lens. I'll also highlight for the court some of the things that came out at trial. For example, before trial on summary judgment, the defendants had submitted a declaration of Ernie Adams, who was the painter, Mr. Doidge's art teacher in Thunder Bay Correctional Center. The declaration said, I reviewed the image of Mr. Doidge. That was my student. I taught him art. He made the painting. In opposing summary judgment, plaintiff's counsel said that Mr. Adams had rejected his declaration. At trial, Mr. Adams testified that he had never recanted, and in fact, Mr. Zeitsky had called him and threatened him with perjury in the U.S. Marshals if he wouldn't recant. At trial, he stood by his declaration and said, yeah, that was my student at Thunder Bay Correctional Center, and that's the painting he made. At trial also, Fletcher said, quote, there's no factual basis, end quote, to dispute the Beauvard Declaration. So his testimony weakened over the course of the case, too. I think one of the key points in this case is the September 2013 status hearing. That was one month after defendants produced the Beauvard Declaration. At that hearing, the district court told Mr. Zeitsky he should strongly consider putting the brakes on this case, and he warned plaintiffs that the standards of review on summary judgment in a trial are different. In response, Mr. Zeitsky said he was, quote, very comfortable with going ahead with the facts that we know. At that hearing, he also told the court, quote, I really don't want to disclose at this point everything that we found. I'll say it again. It's the lawyer's responsibility to objectively assess the strength of their client's claims, and to flip that standard or to reverse at this point, I think would do damage to the summary judgment standard, and risk flipping it in a damaging way going forward. I'll move to Shales next. Overruling Shales, first of all, I think would not change the outcome of this appeal. Appellants concede on pages 7 and 10 of their reply brief that Shales is binding law of the circuit, and awarding sanctions. The parties agree that the district court was correct in recognizing that Shales limited its ability to consider the sanctioned party's ability to pay. So even if the court were inclined to overturn Shales and adopt a new standard moving forward, that wouldn't change the fact that the district court did not abuse its discretion. It didn't misapply established law under Shales. I would add that the Shales case, which is the justification given in Shales for not considering the sanctioned party's ability to pay, are as relevant today as they were when Shales was decided. As for the reasonability of fees, I think it's clear from the record that the district court did not impermissibly presume that all fees were reasonable. Rather, and appellant concedes on page 11 of their brief, that the district court did conduct an analysis and wrote down by 20% defense counsel's fees to account for its view of what the appropriate time was based on its overall sense of the case. Can I ask you about Rule 11 and the amendment in 1993 in the advisory committee notes? The advisory committee notes state that if a party has sufficient evidence with respect to contention, that would suffice to defeat a motion for summary judgment based thereon, it would have had sufficient evidentiary support for purposes of Rule 11. That's what the advisory notes to Rule 11 says. What is your response to that? I think the sanctions award should still be affirmed, regardless of the rate of Rule 11 under Section 1927, which the court also relied on. As this court knows, they can affirm on any basis fairly reflected in the record. I think that advisory note doesn't change the fact that Rule 11 still is also an appropriate basis, given the escalation of egregious conduct as the case pressed forward, as defendants kept producing more and more evidence as the case progressed over the weekend. The case should have been withdrawn far earlier. Do you think the test or the rule that we should adopt is different when a claimant survives or a movement survives summary judgment based upon his or her own statements versus external statements? In other words, say that there's a case where, say there's this case where it wasn't Mr. Fletcher, but it was some other person that was there, and there was affidavits based upon that person, and we still have this mountain of evidence on the other side. Do you think that that would present a different set of circumstances that would be meaningful in our deliberations here versus if it were Mr. Fletcher's own statements? That is the plaintiff's own statements, own credible determinations, that that might put a thumb on the scale in favor of lighting the case we were working on? For example, say instead of Mr. Fletcher's own affidavits or his own statements, that there was a classmate of Mr. Fletcher's, and there's an affidavit by that classmate saying, yes, I saw him at that school, the artist at the school, and he used the wand. That's the only evidence there is. Would our consideration of this appeal be different in that context? Would that change your argument? It may. That may make it more appropriate for the court to have granted a summary of judgment. I think that may be the case, but here we have the counterfacts. Here we have the plaintiff saying I'm the one. So if anything, if there is a meaningful difference, I think this is the case that you affirm, that the district court is right to err on the side of letting the case survive summary judgment, that the district court is right to err on deferring to the lawyer and their understanding of the strength of their case. I would also highlight for the court that the issue about Lebeau, I think, really controls this case, and it can be resolved on that fairly narrow ground. The appellant's argument is that Lebeau created this novel rule, that if you survive summary judgment for whatever reason, a plaintiff is categorically immune from the normal sanctions framework, that there has to be something more, there has to be an intent to defraud the court or actual malice. That's not what Lebeau says, and if the court agrees with our reading, that resolves the case, because when the district court correctly applied Lebeau, there was no abuse of discretion. As the district court correctly recognized, Lebeau held only that a sanctions award may not be based on a ruling that directly conflicts with an earlier ruling from the same court in the same case. And here there was no direct conflict. Judge Brennan, I think you asked this question earlier about Lebeau having this change, question of law versus question of fact, and that's exactly right. In Lebeau, the district court in its pretrial orders and in denying summary judgment had said that the defendant's intent was a question of fact that had to go to a jury, and then later in awarding sanctions, it said that actually intent is a question of law, and thus the EEOC must have known as a matter of law they were going to lose. That is a totally different case than what we have here. Here there's nothing inconsistent with the two different standards and what the district court held on summary judgment, and again with all the evidence that came out at trial. Thank you. Thank you, Mr. Schafbach. Mr. Cedillo will come now back to you for rebuttal. Thank you. I'd like to begin by pointing out that I disagree with the Applebee's reading of Lebeau here. They would have Lebeau only limit the district court to small discrete issues decided on summary judgment, but that's not actually what Lebeau says. If we read the actual quotation, we can only say that when a trial judge rules here that there are facts under which a plaintiff can prevail, it is highly inconsistent for him to later find the suit frivolous because it is foreclosed as a matter of law. In other words, if there's a dispute of facts, the inconsistency applies to the suit, i.e. the claim, not these discrete issues that the Applebee's would have the rule extend to. And again, if it is inconsistent, something is required to overcome that inconsistency. And that's why I propose the reading of Lebeau to require not just a standard analysis, but there has to be something more that renders the case frivolous, i.e. with no reasonable basis after a district court has already found that a reasonable trier of fact could find in favor of the plaintiff or the non-movement, I should say. Also, the Applebee's highlight the expert testimony, and that's not something that should be downplayed here. Another reason the district court denied summary judgment was the conflicting opinions of experts, which in an art case is to be expected given the The judge said, you know, there was the analysis of Bartlow, who was acting as his own expert, was not unreasonable, was not objectionable in theory, and can make sense. And then in the sanctions award, the judge goes ahead and says Bartlow could not have reasonably believed in his expert conclusion. So we have the sanctions award contradicting the court's own oral findings after the trial. That and the inconsistency regarding Fletcher's testimony, which in the sanctions award all of a sudden became irreparably shaky, renders that award inconsistent with the judgment. And on that basis alone, it should be remanded to reexamine the appropriateness of the sanctions award here. It's inconsistent with the findings And as a final point that, and Judge Lee, your question touched on this, when we're talking about a party's testimony forming the basis of sanctions, here we're talking about sanctions on the attorney, who, yes, I agree, it's the attorney's responsibility to vet the case, but he has to go with the evidence he has, including what the client attorney's perspective differently from a party who engages in sanctionable misconduct to survive summary judgment. And here, I don't think we can say that in May of 2014, Ziske should have known that he had no reasonable basis for the claim, and certainly when the judge denies summary judgment, what's an attorney to make of whether there's a reasonable basis to prevail at trial or not? We have the benefit of hindsight arguing here, and we have to look at this case from Mr. Ziske's perspective at the time he was litigating this case. I'm not sure that's your strongest argument in the sense that with evidence just piling up against him, at some point he's got to have a conversation with his client and say, even if we get by summary judgment, our likelihood of succeeding or prevailing at trial is going to be very small. Let's try to settle this case, or let's get rid of this case. Doesn't he have to have that conversation? I agree you should have that conversation, but I think May 2014, that is not a conversation that was appropriate here. We can argue at a later point that may have become appropriate, but in May 2014, through the end of trial, that's what the trial judge found here. And my time is up, and I would ask that you reverse the sanctions award agreement. Thank you. Thank you, Mr. Sedia. Thank you, Mr. Schaafbach. The case will be taken under advisement. We're going to take a brief recess.